**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **STONE HILTON PLLC, a Texas** | § | |
| **Professional Limited Liability Company;** | § | |
| **JUDD STONE; and CHRIS HILTON,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BRENT WEBSTER, in his individual** | § | **CIVIL ACTION NO. 1:25-cv-00983** |
| **capacity; RALPH MOLINA, in his** | § | |
| **individual capacity; and JOSH RENO,** | § | |
| **in his individual capacity** | § | |
| *Defendants.* | § | |
| | § | |
| | § | |
| | § | |
| | § | |

---

## DEFENDANTS' MOTION TO DISMISS

---

Instead of raising viable claims, this lawsuit is a calculated and cynical public relations maneuver by two former employees forced to resign in lieu of termination who face credible and deeply disturbing allegations of sexually harassing women who worked for them. In addition, Plaintiffs seek to constitutionalize, without claiming any actionable legal wrong, actions by their former boss, Defendant Brent Webster, taken out of legitimate concern for his and his family's safety, to divert attention from their own misdeeds. The First Amendment does not deprive public officials of their ability to take such action. Therefore, qualified immunity bars all of Plaintiffs' claims, and this suit should be dismissed with prejudice.

# I.     Table of Contents

I.   Table of Contents ........................................................................................................ 2

II.  Table of Authorities .................................................................................................... 4

III. Background .................................................................................................................. 9

    A. Origin of the Parties' Relationship ........................................................................ 9

    B. Impeachment and Formation of Stone Hilton, PLLC ............................................ 9

    C. Plaintiffs' Resignation in Lieu of Termination .....................................................10

    D. Post-Resignation Period ...................................................................................... 11

    E. PIA Request ......................................................................................................... 12

IV.  Summary of the Argument .........................................................................................16

V.   Argument & Authorities .............................................................................................18

    A. The Court Should Dismiss Plaintiffs' Claims under Rule 12(b)(6) for Failure to State a Claim .........................................................................................................18

        1. Qualified Immunity Bars Plaintiffs' Claims Because They Do Not State a Claim of Violation of Clearly Established Law....................................................18

            a. The Complaint does not allege the deprivation of an actual constitutional right ........................................................................................19

                i. Retaliatory speech by a public official, even if allegedly defamatory, does not constitute cognizable retaliation under the First Amendment. ..................................................................................... 20

                ii. Plaintiffs have not alleged that their speech has been chilled................... 22

                iii. Plaintiffs do not allege a causal link between any protected activity and any adverse action ............................................................................ 24

            b. Plaintiffs have not—and cannot—plead deprivation of a "clearly established" right ......................................................................................27

        2. Plaintiffs have failed to state a claim under the First Amendment....................... 29

            a. Plaintiffs have failed to allege any retaliatory conduct by Molina or Reno ....................................................................................................... 29

            b. Plaintiffs have failed to state a claim for conspiracy under § 1983....................31

                i. Defendants are entitled to qualified immunity from Plaintiffs conspiracy claims .....................................................................................32

                ii. Plaintiffs' claims are barred by the intra-corporate conspiracy doctrine .....................................................................................................34

            c. Plaintiffs have failed to allege facts or legal basis entitling them to relief .........35

    B. The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(1) for Lack of Jurisdiction ..........................................................................................................36

1.  Plaintiffs lack standing to bring their § 1983 claims against Defendants ................37

    a.  Stone Hilton lacks standing because its only alleged injury predates the
        alleged protected activity ..............................................................................37

    b.  Hilton and Stone lack standing because they have failed to allege an
        injury-in-fact...................................................................................................39

VI. Conclusion ........................................................................................................41

## II.    Table of Authorities

## Cases

*Anderson v. Creighton,*
   483 U.S. 635 (1987) .................................................................................27

*Angelle v. Town of Duson,*
   No. 6:18-cv-00272, 2018 WL 4649788 (W.D. La. Aug. 7, 2018) .............35

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................ 28, 29

*Backe v. LeBlanc,*
   691 F.3d 645 (5th Cir. 2012) ....................................................................18

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................ 18, 35

*Bevill v. Fletcher,*
   26 F.4th 270 (5th Cir. 2022)................................................................ 19, 32

*Black Farmers and Agriculturists Ass'n, Inc. v. Hood,*
   No. 3:13CV763TSL, 2014 WL 935147 (S.D. Miss, Mar. 10, 2014)...........21

*Borough of Duryea, Pa. v. Guarnieri,*
   564 U.S. 379 (2011) ................................................................................ 26

*Bright v. City of Killeen Tex.,*
   No. 6:20-CV-431-ADA-JCM, 2021 WL 4431114 (W.D. Tex. May 11, 2021) ...........................34

*Buschi v. Kirven,*
   775 F.2d 1240 (4th Cir. 1985) ..................................................................35

*Cinel v. Connick,*
   15 F.3d 1338 (5th Cir. 1994) ...............................................................32, 34

*Cole v. Carson,*
   935 F.3d 444 (5th Cir. 2019)..................................................................... 29

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496 (5th Cir. 2000) ................................................................... 11

*Colson v. Grohman,*
   174 F.3d 498 (5th Cir. 1999) .................................................21, 22, 24, 28

*Copeland v. Internal Rev. Svcs.,*
   No. 3:20-CV-3288, 2021 WL 3713071 (N.D. Tex. Aug. 4, 2021)...............39

*Coury v. Prot,*
   85 F.3d 244 (5th Cir. 1996) .......................................................................36

*District of Columbia v. Wesby,*
   583 U.S. 48 (2018)...............................................................................27, 28

*Duckett v. City of Cedar Park, Tex.*,
  950 F.2d 272 (5th Cir. 1992) ..................................................................................................32

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) ..................................................................................................18

*Food and Drug Admin. v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ..................................................................................................................38

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ..................................................................................................................37

*Hale v. Townley*,
  45 F.3d 914 (5th Cir. 1995) ....................................................................................................32

*Hammerhead Enters., Inc. v. Brezenoff*,
  707 F.2d 33 (2d Cir. 1983) .....................................................................................................21

*Hanks v. Rogers*,
  853 F.3d 738 (5th Cir. 2017) ..................................................................................................28

*Hansard v. Zamora*,
  749 F. Supp. 3d 790 (W.D. Tex. 2024) ...............................................................................34

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ..................................................................................................................18

*Hartman v. Moore*,
  547 U. S. 250 (2006) .................................................................................................................25

*Hemphill v. City of Monahans*,
  P:18-CV-00044-DC, 2019 WL 13401718 (W.D. Tex. Sept. 13, 2019) .........................23

*High v. Karbhari*,
  774 F. App'x. 180 (5th Cir. 2019) .........................................................................................38

*Hill v. City of Seven Points*,
  No. 00-41436, 2002 WL 243261 (5th Cir. Jan. 17, 2002) ................................................32

*Hilliard v. Ferguson*,
  30 F.3d 649, 652 (5th Cir. 1994) ...........................................................................................34

*Home Builders Ass'n of Miss., Inc. v. Madison*,
  143 F.3d 1006 (5th Cir. 1998) ...............................................................................................36

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) ..................................................................................................36

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ..................................................................................................18

*Johnson v. Johnson*,
  385 F.3d 505 (5th Cir. 2004) ..................................................................................................19

*Kaye v. Lone Star Fund V (U.S.), L.P.,*
    453 B.R. 645 (N.D. Tex. 2011) ................................................................. 11

*Keenan v. Tejada,*
    290 F.3d 252 (5th Cir. 2002) ............................................................ 20, 22

*Kinney v. Weaver,*
    367 F.3d 337 (5th Cir. 2004) ..................................................................... 28

*Lore v. City of Syracuse,*
    670 F.3d 127 (2d Cir. 2012) ...................................................................... 24

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................. 37

*Matherne v. Larpenter,*
    216 F.3d 1079 (5th Cir. 2000) ....................................................... 21, 24, 28

*McClendon v. City of Columbia,*
    305 F.3d 314 (5th Cir. 2002) ..................................................................... 19

*McDonald v. Bennett,*
    674 F.2d 1080 (5th Cir. 1982) ................................................................... 40

*McLaughlin v. Watson,*
    271 F.3d 566 (3d Cir. 2001) ...................................................................... 21

*McLin v. Ard,*
    866 F.3d 682 (5th Cir. 2017) ..................................................................... 22

*Memphis Cmty. Sch. Dist. v. Stachura,*
    477 U.S. 299 (1986) .................................................................................. 35

*Mills v. Bogalusa,*
    No. 13-5477, 2014 WL 29933426 (E.D. La. 2014) .................................... 23

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) .................................................................................. 19

*Moran v. Kingdom of Saudi Arabia,*
    27 F.3d 169 (5th Cir. 1994) ....................................................................... 37

*Morgan v. Swanson,*
    610 F.3d 877 (5th Cir. 2010) ..................................................................... 19

*Morris v. Lindau,*
    196 F.3d 102 (2d Cir. 1999) ...................................................................... 24

*Mt. Healthy City Sch. Bd. of Educ. v. Doyle,*
    429 U.S. 274 (1977) .................................................................................. 24

*Mullenix v. Luna,*
    577 U.S. 7 (2015) ...................................................................................... 27

*Nelson Radio & Supply Co. v. Motorola Inc.*,
  200 F.2d 911 (5th Cir. 1952) ................................................................35

*Nieves v. Bartlett*,
  587 U. S. 391 (2019) ...........................................................................25

*NiGen Biotech, L.L.C. v. Paxton*,
  804 F.3d 389 (5th Cir. 2015)................................................................38

*Noonan v. Kane*,
  No. 20-3610, 2022 WL 2702153 (3d Cir. July 12, 2022) ....................21, 22

*NRA of Am. v. Vullo*,
  602 U.S. 175 (2024) ............................................................................25

*Nunez v. Simms*,
  341 F.3d 385 (5th Cir. 2003) ...............................................................27

*O'Neal v. Falcon*,
  668 F. Supp. 2d 979 (W.D. Tex. 2009)................................................. 24

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ............................................................................18

*Pfannstiel v. City of Marion*,
  918 F.2d 1178 (5th Cir. 1990)...............................................................32

*Pickering v. Bd. of Educ.*,
  391 U.S. 563 (1968) ............................................................................19

*R.C. Maxwell Co. v. Borough of New Hope*,
  735 F.2d 85 (3d Cir. 1984) ...................................................................21

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ........................................................... 36, 37

*Schaffer v. Universal Rundle Corp.*,
  397 F.2d 893 (5th Cir. 1968) ................................................................ 40

*Spear v. Town of W. Hartford*,
  954 F.2d 63 (2d Cir. 1992) ................................................................... 22

*Stockman v. Fed. Election Comm'n*,
  138 F.3d 144 (5th Cir. 1998)................................................................36

*Suarez Corp. Indus. v. McGraw*,
  202 F.3d 676 (4th Cir. 2000) .....................................................20, 21, 22

*Sullivan v. Carrick*,
  888 F.2d 1 (1st Cir. 1989) .................................................................... 22

*Sure-Tan, Inc. v. NLRB*,
  467 U.S. 883 (1984) ........................................................................... 26

*Turner v. Lieutenant Driver*,
 848 F.3d 678 (5th Cir. 2017) ........................................................................10

*Veney v. Ojeda*,
 321 F. Supp. 2d 733 (E.D. Va. 2004) ...........................................................35

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
 987 F.2d 429 (7th Cir. 1993) ........................................................................11

*Victoria W. v. Larpenter*,
 369 F.3d 475 (5th Cir. 2004) ........................................................................35

*Voluntary Purchasing Grps., Inc. v. Reilly*,
 889 F.2d 1380 (5th Cir. 1989) ......................................................................37

*Weaver v. United States*,
 298 F.2d 496 (5th Cir. 1962) ........................................................................10

*Whisenant v. City of Haltom*,
 106 F. App'x 915 (5th Cir. 2004) (per curiam) .............................................34

*Wilson v. Layne*,
 526 U.S. 603 (1999) ......................................................................................19

### III.    <u>Background</u>

Plaintiffs have used their Complaint as a vehicle to air numerous unfounded grievances and allegations against Defendants, most of which are irrelevant to the actual claims asserted by Plaintiffs. *See e.g.,* Dkt. 1 at ¶¶ 1–4.  In doing so, Plaintiffs have presented the Court with allegations masquerading as facts that appear intended to mislead the Court. To counter Plaintiffs' efforts to mislead the Court, Defendants provide the following information:

### A.  Origin of the Parties' Relationship

Plaintiffs Judd Stone ("Stone") and Christopher Hilton ("Hilton") previously held senior leadership positions within the Office of the Attorney General of Texas ("OAG"), serving as Solicitor General and Chief of the General Litigation Division, respectively. Both Stone and Hilton attained these positions during Brent Webster's ("Webster") tenure as First Assistant Attorney General, during which Defendants Ralph Molina ("Molina") and Josh Reno ("Reno") served as Deputy First Assistant Attorney General and Deputy Attorney General for Criminal Justice. *Id.* at ¶¶ 1, 2, 8–10, 19. In an early effort by Webster to forge a connection with Stone as the new Solicitor General, Stone responded by describing himself as a powerful man with violent tendencies, including homicidal ideations, for which he received mental-health treatment—an admission that framed how Webster ultimately viewed Stone's later actions toward him. *Id.* at ¶ 33. These statements would later form the basis of Webster's credible fear for his safety. *Id.* at ¶¶ 21, 22.

### B.  Impeachment and Formation of Stone Hilton, PLLC

In 2023, Stone and Hilton requested permission from Webster to take leave to defend Attorney General Paxton during his impeachment proceedings. Webster granted Stone and Hilton leaves of absence for the limited purpose of representing the Attorney General during

impeachment. *Id.* at ¶ 2, 14. To carry out that representation, Stone and Hilton formed a private

entity, Stone Hilton PLLC ("Stone Hilton"). *Id.*

      After the impeachment proceeding concluded, Stone and Hilton began executing plans to

capitalize on Attorney General Paxton's successful defense. They began actively soliciting clients,

which was outside the limited scope of their authorized leave and a violation of OAG policy. *Id.* at

¶ 16. OAG demanded their immediate return to their prior positions at the agency, and Stone and

Hilton reluctantly returned.

### C.  Plaintiffs' Resignation in Lieu of Termination

      Immediately upon returning from the impeachment representation, several women who

had worked at Stone Hilton reported accounts of harassment to senior agency officials, including

Molina and Webster. *Id.* at ¶ 23, Ex. B. The details of these accounts of harassment are set out in

Exhibit B to Plaintiffs' Complaint. One employee, visibly distressed and in tears, recounted the

cumulative abuse she had suffered and made clear she could not continue working under Stone and

Hilton. *Id.* at ¶ 23, Ex. B. Shortly thereafter, another female employee—who had also worked with

Stone and Hilton during the impeachment—came forward with her own allegations of harassment.

Those disturbing allegations are currently at issue in other litigation expressly referenced by

Plaintiffs in their Complaint. *See Jordan Eskew v. Stone Hilton PLLC, Judd Stone, and Christopher*

*Hilton,* Case No. 1:25-cv-00804-ADA-SH (W.D. Tex. June 16, 2025).[1]

---

[1] The Fifth Circuit has held that judicial notice may be taken of "[s]pecific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." *Turner v. Lieutenant Driver*, 848 F.3d 678, 692 n.63 (5th Cir. 2017) (quoting *Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962)); see also Fed. R. Evid. 201(b) (providing that a court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Consistent with Texas law and in recognition of the OAG's duty to protect its personnel, agency leadership immediately reported the misconduct and took prompt remedial action. Dkt. 1 at ¶ 15. Multiple high-ranking officials, both named and unnamed in this suit, reached a unanimous conclusion: the OAG's priority was to protect those who had come forward. At a formal termination meeting, Hilton immediately agreed to resign. *Cf. id.* at ¶ 20. Stone admitted to the allegations against him and ultimately chose to resign in lieu of termination.

### D. Post-Resignation Period

Following their dismissal, Plaintiffs returned to their private firm. *Id.* at ¶ 2. Plaintiffs subsequently began seeking out matters they had previously worked on as part of their employment at OAG. *Id.* at ¶ 16. Plaintiffs are well aware that Texas law prohibits such a transition without a formal written waiver issued by the First Assistant Attorney General. In fact, they requested and successfully obtained such a waiver from Webster in *State of Texas v. Colony Ridge, Inc., et al.*

Despite their knowledge of this process, and contrary to the allegation in the Complaint that Webster interfered with a prospective client, Plaintiffs failed to obtain such a waiver with respect to the matter referenced by Plaintiffs in the Complaint. *Cf. id.* Webster communicated to the State's outside counsel in this matter that the agency had statutory, ethical, and strategic concerns regarding Plaintiffs working on this particular matter. After letting outside counsel know

---

As an initial matter, the Fifth Circuit has "note[d] approvingly" that "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). According to the Fifth Circuit, "'[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499. Stated differently: "for a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss; (2) be referred to in the plaintiff's complaint; and (3) be central to the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). Here, the State Bar complaint is referenced in the Complaint, at ¶ 14, and a necessary element of their claims. Accordingly, the Court can take judicial notice that the complaint against Defendant Webster filed by Plaintiffs Stone and Hilton was submitted on June 24, 2025, a copy of which is attached to this Motion as Exhibit 1 and incorporated fully herein.

that concerns existed, Defendants had no further role in determining whether Plaintiffs would be retained to work with outside counsel on this matter. Rather, that decision was made solely by outside counsel. *See id.*

### E. PIA Request

Transparency is a cornerstone of good governance. Texas law, consistent with both state and federal precedent, ensures public access through Public Information Act (PIA) requests. It is through such mechanisms that the people of Texas are empowered to oversee their government and hold it to account. *Id.* at ¶ 18. Plaintiffs concede they publicly attacked Webster following their separation from the OAG, *id.* at ¶ 34, but the crux of their Complaint centers around a PIA request. *See, e.g.*, *id.* at ¶¶ 18–29, Ex. A. On November 27, 2024, Plaintiffs requested five categories of documents demonstrating a preoccupation with Webster. *Id.* at ¶¶ 18, 34, 44. According to Plaintiffs, this request marked the point at which Plaintiffs sought to "speak and petition" the government, alleging they did so to expose what they describe as misuse of public office by Webster, *id* at ¶¶ 18, 34, 42–44, a bare allegation upon which Plaintiffs do not elaborate or support notwithstanding the wide range of documents requested and received through Plaintiffs' PIA request. They did not do so because there is no evidence to support Plaintiffs' self-serving allegations.

Upon returning to work on December 2, 2024, after the Thanksgiving holiday, the request was brought to Webster's attention. *Id.* at ¶¶ 18–19, Ex. B. Webster was concerned by the continued focus on him by Stone, particularly given the patently false and easily disprovable accusations and implications contained in the request. In the days immediately preceding the request, a former high-ranking agency official informed Webster of new encounters with Stone. During these incidents, Stone was once again overheard making hostile and erratic remarks about Webster in

public settings. These incidents made Webster concerned for his personal safety and that of his family due to Stone's prior disclosure to Webster of his mental-health challenges, concerns that were only intensified by Stone's continued obsession and alarming rhetoric. *Id*. at ¶ 21, Ex. B. Agency officials urged Defendant Webster to take these threats seriously. *Id*. at ¶¶ 21, 39.

In light of these developments, and out of an abundance of caution, Webster determined it was appropriate to formally document his concerns and sent an email to Reno, Deputy Attorney General for Criminal Justice, explaining the situation. *Id*. at ¶ 21, Ex. B. The email outlined the history of Plaintiffs' concerning behavior, the reasons for Plaintiffs' resignations in lieu of termination, and Webster's concerns for his safety based on Stone's erratic and threatening actions. *See id*. at Ex. B. As is common for prosecutors and agency attorneys who face credible threats due to the nature of their official duties, a threat assessment was promptly ordered. *Id*. at ¶ 39.

Plaintiffs allege the disclosure of this email was improper and retaliatory. *See, e.g., id*. at ¶¶ 30-35. However, as Plaintiffs acknowledge, the responsibility to determine what records are subject to disclosure under the PIA lies not with the First Assistant, but with designated personnel trained to apply that law. In accordance with standard procedure, Plaintiffs' request was submitted to the Open Records Division of the Office of the Attorney General for a ruling regarding what records were subject to disclosure. A formal letter ruling—OR2025-011323[2]--was issued that ordered the release of certain documents, including the email at issue with redactions for privacy reasons. Plaintiffs had the right to challenge this determination but chose not to do so. *Cf. id*. at ¶ 25.

---

[2] An additional letter ruling (OR2025-019487) was issued in response to a subsequent request which came to the same conclusion that the email was subject to public disclosure.

Nonetheless, while it is unclear what action, and by which Defendant, allegedly caused Plaintiffs enumerated injuries, it appears that Plaintiffs believe the dissemination of this email caused them varying harms as a result of what they believe to be an exercise of their First Amendment rights. *Id.* at ¶ 26. Importantly, however, Plaintiffs specifically allege only one potentially lost client engagement, which occurred *before* Plaintiffs submitted their PIA request and *before* Webster sent the e-mail. *See id.* at ¶¶ 16–18.

Any actions taken by Webster with respect to Plaintiffs were purely administrative and fell squarely within the bounds of standard agency protocol. The assertion that Webster engaged in retaliation for the exercise of constitutional rights, *id.* at ¶ 19, is unfounded and unsupported by the record. To provide clarity and context, Defendants outline the relevant factual allegations in the following timeline, as they largely predate the PIA request. *See id.* at ¶¶ 36, 43. The timeline reveals that any retaliation that occurred in this case was Plaintiffs' retaliation against Webster for exposing their attempt to procure a client without a proper waiver from the Office of the Attorney General.

**Timeline of Events[3]:**

- **February 1, 2021 –** Judd Stone becomes Texas Solicitor General;

- **Mid-2023 –** Stone and Hilton take a leave of absence from the Office of Attorney General and formed the firm Stone Hilton PLLC to represent Ken Paxton in the Senate impeachment trial**.** (Dkt. 1 at ¶¶ 2, 14; *see also*, *Eskew* Complaint at ¶ 16);

- **September 2023 –** Following the conclusion of the impeachment trial[4], Stone and Hilton return to their positions as Solicitor General[5] and Chief of General Litigation Division[6] of the OAG, respectively (Dkt. 1 at ¶ 20);

---

[3] This timeline contains dates pulled directly from the Complaint or incorporated documents. Inaccuracies are corrected in the footnotes for clarity.
[4] Attorney General Paxton is acquitted in his impeachment proceeding on September 16, 2023 and Plaintiffs' representation.
[5] Stone returns to the OAG on October 2, 2023.
[6] Hilton returns to the OAG on October 9, 2023.

Defendants' Motion to Dismiss                                                      Page 14 of 42

- **October 13, 2023 –** First female reports issues of harassment by Stone and Hilton (*See id.* at Ex. A.);

- **October 16, 2023 –** Second female reports issues of harassment by Stone and Hilton (*See id.*);

- **October 2023 –** Stone and Hilton resign in lieu of termination.[7] (*Id.* at ¶ 20);

- **March 28, 2024 –** Jordan Eskew files a complaint with the Texas Workforce Commission Civil Rights Division ("TWC") alleging workplace sexual harassment while employed at Stone Hilton PLLC. (*Id.* at ¶¶ 23, Ex. A);

- **Early November 2024 –** Stone Hilton allegedly loses a business deal due to Webster's actions. (*id.* at ¶¶ 16-17);

- **November 27, 2024 –** Stone Hilton submits a Public Information Act ("PIA") request (*id.* at ¶ 18);

- **December 2, 2024 –** Webster sends the e-mail documenting his concerns about Stone. (*id.* at ¶ 20);

- **June 16, 2025 –** Eskew files her lawsuit against Stone and Hilton (*see generally, Eskew* Complaint);

- **June 24, 2025 –** Plaintiffs file a State Bar complaint against Webster (*id.* at ¶ 14; *see* Ex. 1); and

- **June 25, 2025 –** Plaintiffs file this lawsuit.

---

[7] Stone and Hilton resign in lieu of termination on October 17, 2023.

## IV.    <u>Summary of the Argument</u>

Plaintiffs' claims should be dismissed under Rule 12(b)(6) because they have failed to state a claim upon which relief may be granted.

***First***, Plaintiffs bring their claims against Defendants in their individual capacities, and as a result, all Defendants are protected by qualified immunity. Since Plaintiffs do not allege a violation of a constitutional right that was clearly established at the time, they cannot overcome Defendants' qualified immunity. Specifically, Plaintiffs' complaint about Defendants' allegedly retaliatory speech, without any allegation that Defendants threatened or imposed official action, fails to state a viable First Amendment retaliation claim. Plaintiffs' Complaint also affirmatively establishes that their speech was not chilled by any alleged conduct of Defendants, and it fails to allege a causal connection between any protected activity taken by Plaintiffs and the alleged conduct of Defendants.

***Second***, Plaintiffs fail to allege any specific conduct by Defendants Molina or Reno that would support a First Amendment claim. Since Plaintiffs sued Defendants in their individual capacity, they must identify specific conduct by each individual defendant that demonstrates a violation of the Constitution. Their failure to do so as to Defendants Molina and Reno is fatal to their retaliation claim.

***Third***, Plaintiffs' conspiracy claim fails because there is no underlying First Amendment violation to support it. Additionally, the intracorporate-conspiracy doctrine, which applies even when defendants are sued in their individual capacities, precludes the existence of a conspiracy. Finally, qualified immunity also applies to bar any conspiracy claim asserted against Defendants.

***Fourth***, Plaintiffs have failed to plead an injury traceable to Defendants and have thus failed to state a plausible claim for damages.

Additionally, Plaintiffs claims should be dismissed under Rule 12(b)(1) because Plaintiffs lack standing to bring the claims asserted in the Complaint. Stone Hilton's only alleged injury is the loss of a potential client, which predates any possible protected activity Stone Hilton engaged in as set forth in the Complaint. This lack of traceability is fatal to Stone Hilton's standing. Stone and Hilton, individually, have also failed to identify a concrete injury-in-fact which is necessary to create standing. At most, they have made a general assertion of reputational harm that is not concrete, particularized, actual, or imminent, and this fails to create standing to bring claims against Defendants.

## V.    Argument & Authorities

### A.  The Court Should Dismiss Plaintiffs' Claims under Rule 12(b)(6) for Failure to State a Claim

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555). The Court is not required to conjure up unpled allegations in order to save a complaint, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice . . . ." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

### 1.  Qualified Immunity Bars Plaintiffs' Claims Because They Do Not State a Claim of Violation of Clearly Established Law.

Government officials who perform "discretionary functions" are entitled to qualified immunity from § 1983 suits against them in their individual capacity. *Harlow v. Fitzgerald*, 457 U.S. 800, 801 (1982). Qualified immunity protects such officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity is immunity from suit under § 1983 rather than a mere defense to liability." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Pearson*, 555 U.S. at 237). When, as here,

defendants assert qualified immunity as a defense in a Rule 12(b)(6) motion, they are "entitled to dismissal before the commencement of discovery," unless the plaintiff sufficiently alleges a violation of a clearly established right. *See Morgan v. Swanson*, 610 F.3d 877, 882 (5th Cir. 2010), *rev'd on other grounds*, 628 F.3d 705 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

"Once a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to show that (1) the official violated a . . . constitutional right . . . (2) [that] was 'clearly established' at the time." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (citations and quotations omitted); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999). A court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson*, 526 U.S. at 609 (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[T]he burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

### a. The Complaint does not allege the deprivation of an actual constitutional right

The first prong of the qualified immunity analysis requires that the Court determine whether Plaintiffs "alleged the deprivation of an actual constitutional right." *Wilson*, 526 U.S. at 609. "[T]he defendant's conduct cannot constitute a violation of clearly established law if, on the plaintiff's version of the facts, there is no violation at all." *Johnson v. Johnson*, 385 F.3d 505, 525 (5th Cir. 2004). Here, Plaintiffs allege that Defendants deprived them of their First Amendment rights to free speech and petition when Defendants allegedly engaged in acts of retaliatory speech.

The First Amendment right to free speech includes not only the affirmative right to speak but also the right to be free from retaliation by a public official for the exercise of that right. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). A plaintiff must plead (1) they engaged in protected speech,

(2) the defendant's actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such speech, and (3) a causal relationship exists between plaintiff's speech and defendant's alleged retaliatory action. *Keenan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted). Plaintiffs' claims fail to satisfy any of these requirements.

  i.  *Retaliatory speech by a public official, even if allegedly defamatory, does not constitute cognizable retaliation under the First Amendment.*

Plaintiffs attempt to cast themselves in the role of concerned private citizens, speaking out against a corrupt public official. Dkt. 1 at ¶ 31. However, Stone and Hilton, like Defendants, are public figures. They, like Defendants, held senior roles in the Office of the Attorney General. It is a matter of public record that Stone was the Solicitor General for Texas, has served on Senators Cornyn and Cruz's Federal Judicial Evaluation Committee, and regularly speaks at public events. Hilton was the chief of the OAG's General Litigation division. However, whether Stone and Hilton are public or private figures is ultimately irrelevant because, as discussed below, the so-called retaliatory speech they complain of does not support a First Amendment retaliation claim.

When a public official allegedly responds to speech with his own speech, "[t]he nature of the alleged retaliatory acts has particular significance" because the "public official's own First Amendment rights are implicated." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000). "[W]here a public official's alleged retaliation is in the nature of speech, in the absence of threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Id.* at 687. "[L]iability will attach only if the public officials . . . imposed or threatened official action." *Noonan v. Kane*, No. 20-3610, 2022 WL 2702153, at *1 (3d Cir. July 12,

2022).[8] "[S]trongly urging or influencing, but not 'coercing' a third party to take adverse action . . . d[oes] not violate plaintiff's constitutional rights." *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001). This standard strikes a balance between "the citizen's right to exercise his First Amendment rights and the public official's personal First Amendment rights, as well as his duty to the public to speak out about matters of public concern." *Suarez*, 202 F.3d at 688.

The Fifth Circuit has squarely foreclosed Plaintiffs' claims, holding that that "the making of false accusations . . . is not actionable under § 1983." *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999). "[C]riticism, an investigation (or an attempt to start one), and false accusations" are "harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Id*; *accord Matherne v. Larpenter*, 216 F.3d 1079 (5th Cir. 2000) (table) ("[D]efamation or criticism followed by nothing more produces nothing actionable under the First Amendment.").

These principles control. Plaintiffs allege that Defendants—high-ranking public officials in the OAG, Dkt. 1 ¶ 32—retaliated against them for their exercise of free speech through their own exercise of free speech. Plaintiffs allege that: (1) Webster suggested that a potential client not hire Stone Hilton, Dkt. 1 at ¶ 16, and (2) Defendants intentionally distributed to the media an email discussing Plaintiffs Stone's and Hilton's ouster from OAG for sexual harassment, Stone's sexual

---

8 *See also R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 89 (3d Cir. 1984) (holding that borough that sent letters to landowner encouraging, but not threatening, intimidating, or coercing, the landlord to terminate its leases with a billboard owner did not violate the billboard owner's First Amendment rights where the landowner terminated the leases in order to curry favor with the borough); *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 38–39 (2d Cir. 1983) (holding that public official who sent letters to retail stores requesting they refrain from selling a board game did not violate the board game manufacturer's First Amendment rights because public official's letters did not intimate some form of punishment or adverse regulatory action would follow the failure to accede to request); *Black Farmers and Agriculturists Ass'n, Inc. v. Hood*, No. 3:13CV763TSL, 2014 WL 935147, at *11–12 (S.D. Miss, Mar. 10, 2014) (holding that Attorney General of Mississippi did not violate associations First Amendment rights where he encouraged—but did not threaten or coerce—citizens not to join association because of fraudulent practices).

proclivities, and the threat Stone posed to Webster. Dkt. 1 ¶ 23; *see also* ¶¶ 33, 42. Because the alleged retaliation took the form of speech on matters of public concern (and thus implicates Defendants' own rights to free speech[9]), the Complaint does not allege a First Amendment retaliation claim because it does not allege that Defendants' speech "intimate[d] that punishment, sanction, or adverse regulatory action w[ould] imminently follow." *Suarez*, 202 F.3d. at 689. While Defendants deny that they made any defamatory statements—and in fact stand by the veracity of the information contained in the December 2024 email—the Complaint alleges, at most, "defamat[ion]," Dkt. 1 ¶ 3, which is "not actionable under [the Fifth Circuit's] First Amendment retaliation jurisprudence." *Colson*, 174 F.3d at 512. Plaintiffs' Complaint describes nothing more than a "war of words waged in the press—that is to say, politics as usual," *Noonan*, 2022 WL 2702153, at *1.

### ii. *Plaintiffs have not alleged that their speech has been chilled.*

Even if the allegedly retaliatory speech at issue could constitute actionable retaliation, Plaintiffs fail to allege to that their "exercise of free speech has been curtailed." *Keenan*, 290 F.3d at 259 (citing *Suarez*, 202 F.3d at 686; *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992); *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989)); *see also McLin v. Ard*, 866 F.3d 682, 696–97 (5th Cir. 2017) (affirming dismissal of plaintiff's § 1983 First Amendment retaliation claim where he "never alleged that the [d]efendants' conduct stopped him from speaking further").

Plaintiffs do not allege that they refrained from speaking, curtailed their speech, or abandoned any petitioning activity as a result of Defendants' alleged conduct. Plaintiffs only allege

---

[9] Webster's First Amendment rights are particularly strong because the allegedly defamatory email shows Webster requesting police protection out of fear for his safety. Publicly officials should not be chilled from seeking police protection or making requests of law enforcement out of fear of First Amendment retaliation suits in response.

that Defendants alleged retaliatory acts harmed them economically or harmed their reputation—they never allege that their speech was inhibited in some way. Indeed, though Plaintiffs allege that a person of ordinary firmness would be deterred from speaking by Defendants alleged actions, Plaintiffs never state that *they were actually deterred. See., e.g.,* Dkt. 1 at ¶ 33 ("Defendants' actions…have inflicted reputational and economic injuries. A person of ordinary firmness would be deterred from speaking…A person of reasonable firmness is not willing to press on…"); ¶ 43 ("The harms that would have deterred a reasonable person from exercising their speech rights…that is, substantial financial losses and public embarrassment…would similarly deter a person of reasonable firmness from exercising his petitioning rights."). In fact, accepting the Complaint as true, Plaintiffs expressly confirm that their speech was not chilled: one day before filing this lawsuit, they admit that they "reported all relevant details to the State Bar and the appropriate authorities." *Id.* at ¶ 14. Consequently, Plaintiffs have not sufficiently alleged that Defendants have deprived them of a Constitutional right, and qualified immunity bars their claims as a matter of law. *See, e.g.*, *Hemphill v. City of Monahans*, P:18-CV-00044-DC, 2019 WL 13401718, at *4 (W.D. Tex. Sept. 13, 2019) ("Plaintiff is required to plead that his exercise of free speech has been curtailed."); *Mills v. Bogalusa*, No. 13-5477, 2014 WL 29933426, at *4 (E.D. La. 2014) (dismissing First Amendment retaliation claim where plaintiff failed to plead "specific facts showing actual curtailment in response to defendants' allegedly retaliatory activity.").

In the alternative, even if it were sufficient that a person of ordinary firmness would be deterred from speaking, the Complaint fails to adequately allege facts supporting this element.[10] Not every reaction made in response to an individual's exercise of free speech is actionable retaliation.

---

[10] The Complaint's pleading of this element is a legal conclusion not entitled to deference.

*See, e.g., O'Neal v. Falcon*, 668 F. Supp. 2d 979, 987 (W.D. Tex. 2009) ("Not all retaliatory conduct tends to chill First Amendment activity, and a plaintiff seeking to recover for retaliation must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to her exercise of First Amendment rights.") (citations omitted). "A 'plaintiff must cross a certain threshold of harm before she can bring a claim for First Amendment retaliation.'" *Matherne,* 54 F. Supp. 2d at 687 (citing *Colson*, 174 F.3d 498, 513 n.8 (5th Cir. 1999)). According to the Complaint, Plaintiffs engage in "communications to the Attorney General, to OAG, and to those in their social and professional circles regarding Webster's [alleged] corruption." Dkt. 1 at ¶ 9. The Complaint itself certainly does not shy away from name-calling and overwrought expression. *E.g.*, *Id.* at ¶ 1 ("petty tyrant"). In light of Plaintiffs' ongoing, undeterred exercise of their First Amendment rights to attack those with whom they disagree, the Complaint falls far short of alleging that a person of ordinary firmness would be deterred from speaking by the allegedly retaliatory conduct.

> iii. *Plaintiffs do not allege a causal link between any protected activity and any adverse action*

Plaintiffs must allege that their protected activities were a "substantial" or "motivating" factor in Defendants taking action against them. *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Plaintiffs "may not rely on conclusory assertions of retaliatory motive but must offer instead some tangible proof to demonstrate that [his] version of what occurred was not imaginary." *Morris v. Lindau*, 196 F.3d 102, 111 (2d Cir. 1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012). This generally requires "plaintiffs claiming First Amendment retaliation to "establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury[.]'" *NRA of Am. v. Vullo*, 602 U.S. 175,

203 (2024) (citing *Nieves v. Bartlett*, 587 U. S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U. S. 250, 259 (2006)).

    ***First,*** with respect to suggesting a client not hire Stone Hilton, Plaintiffs fail to allege that this was caused by any protected activity they engaged in. Crediting the Complaint, Webster suggested that a client not retain Stone Hilton "because of personal and political disagreements." Dkt. 1 at ¶ 2. The Complaint alleges that Webster's "true purpose" was "to punish Stone and Hilton because of his personal vendetta." *Id.* at ¶ 3. Webster allegedly "actively seeks to harm Plaintiffs using any means at his disposal" because of "a mutual enmity rooted in the actions Webster undertook during Plaintiffs' representation of Attorney General Ken Paxton in his impeachment trial." *Id.* at ¶ 14. Webster acted on a "petty, personal grudge." *Id.* at ¶ 15.

    These allegations refute any claim of First Amendment retaliation. Crediting the allegation that Webster "seeks to harm Plaintiffs using any means at his disposal" because of "mutual enmity" means that Webster would have suggested a client not hire Stone Hilton, *id.* at ¶ 16, regardless of any protected activity. The facts pleaded in the Complaint not only fail to support Plaintiffs' § 1983 claims but affirmatively defeat them. Crediting the Complaint, Webster acted on a "personal vendetta" against Plaintiffs, not because of their exercise of any rights under the First Amendment.

    ***Second,*** with respect to drafting an email, Plaintiffs fail to allege that the act was caused by any protected activity. As with suggesting that a client not hire Stone Hilton, the Complaint's allegation that Webster "actively seeks to harm Plaintiffs using any means at his disposal" refutes any theory that the exercise of protected rights was the motivating factor of any acts by Webster.

    Moreover, Plaintiffs' claims under the Petition Clause (Counts 3 and 4) fail because they have not alleged facts establishing that they petitioned the government. Plaintiffs allege that they

were subject to retaliation for (1) "reporting Webster's [alleged] conduct to the OAG and the Attorney General" and (2) their PIA request. *Id.* at ¶ 42. Neither, however, is an act of petition under the Petition Clause. "[T]he right to petition is generally concerned with expression directed to the government seeking redress of a grievance." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). "Interpretation of the Petition Clause must be guided by the objectives and aspirations that underlie the right." *Id.* "A petition conveys the special concerns of its author to the government, and, in its usual form, requests action by the government to address those concerns." *Id.* at 388–89 (citing *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896–97 (1984)). Plaintiffs allege that they "sought an end to corruption" by reporting Webster's alleged misconduct, Dkt. 1 at ¶ 42; however, they never allege that they requested any form of redress. They state that they merely made a report. A PIA request is a request for documents made publicly available by statute. It is not an expression of a grievance requesting any form of redress from the government. Accordingly, Plaintiffs do not allege facts establishing that they did anything to exercise their rights under the First Amendment's Petition Clause and their claims under the Petition Clause (Counts 3, 4) fail as a matter of law.

Nor are Plaintiffs correct that "Stone Hilton's public information request," the alleged motivation for drafting the email, is protected by the speech clause of the First Amendment. The Complaint appears to concede as much: it alleges that "communications to the Attorney General, to OAG, and to those in their social and professional circles regarding Webster's corruption are unquestionably constitutionally protected conduct," *id.* at ¶ 31, but it attributes the email to "Stone's and Hilton's request for public documents," not to these allegedly protected communications. *Id.* at ¶ 34.

Because the filing of the public information request is not protected under either the Petition Clause or the Free Speech Clause, Plaintiffs' claims based on the alleged drafting and distribution of an email in response fail.

### b. Plaintiffs have not—and cannot—plead deprivation of a "clearly established" right

As discussed above, Plaintiffs have failed to allege that any Defendant deprived any of the Plaintiffs of an actual constitutional right. But even assuming they had established deprivation, they have not—and cannot—plead that the right was "clearly established" at the time of the alleged deprivation.

A right is clearly established if, "at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal citations omitted). The pleading standard is heightened in qualified immunity cases and "requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003); *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) ("The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.") (citation and internal quotation marks omitted)). The dispositive question is not whether the right was clearly established as a general matter, but whether "every reasonable official" would have understood, in the precise circumstances confronted, that the conduct was unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Wesby*, 583 U.S. at 63 (reasoning that to be "clearly established" the law must clearly

prohibit the defendant's "conduct in the particular circumstances before him."). Although overcoming qualified immunity does not require a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017).

Here, Plaintiffs have failed to plead any facts showing that any Defendant violated a clearly established constitutional right. At most:

- Webster is alleged to have prepared an internal email regarding safety concerns, which, without more, is not inherently unlawful or indicative of a constitutional violation. Beyond mere conclusory allegations and elemental recitations, Plaintiffs do not plead facts indicating how the email itself deprived anyone of a constitutional right, nor do they identify any case law suggesting such communication could do so.

- Molina is not accused of any conduct at all. By definition, a defendant cannot be held liable for unconstitutional conduct where no conduct is alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (liability requires action by the individual defendant).

- Reno's only identified act was performing a routine job function—performing an internal safety assessment and dispatching officers to Webster's home following a documented concern for safety. Plaintiffs do not plead any facts showing that this routine conduct violated the Constitution or that any reasonable officer would understand this action to be unlawful. Without a specific factual allegation showing that Reno acted unlawfully, there is no basis to overcome qualified immunity.

No Fifth Circuit or Supreme Court case holds that the type of conduct alleged in this case was unconstitutional, much less "beyond debate" at the time. *See Wesby*, 583 U.S. at 63. To the contrary, the Fifth Circuit has held that "false accusations" and "defamation" do not constitute actionable retaliation under the First Amendment. *Colson*, 174 F.3d at 512; *Matherne*, 216 F.3d at 1079. Binding precedent does not provide "fair warning" that the conduct alleged in the Complaint would violate the Constitution. *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). Accordingly, each Defendant is entitled to qualified immunity, both because Plaintiffs have failed to plausibly allege a constitutional violation, and because the law was not clearly established under the

circumstances. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time").

### 2.  Plaintiffs have failed to state a claim under the First Amendment

#### a.  *Plaintiffs have failed to allege any retaliatory conduct by Molina or Reno*

Plaintiffs allege no facts in their retaliation claims (Counts 1 and 3) showing that Defendants Molina or Reno took any action against Plaintiffs to chill their exercise of free speech or petition. This is fatal to both retaliation claims as well as the related conspiracy claims. The Supreme Court made clear in *Ashcroft v. Iqbal* that a § 1983 "plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." 556 U.S. at 676. There, the Court rejected purposeful discrimination as simply knowledge or awareness of consequences of another's actions and emphasized that it implicates a decisionmaker's adoption of a policy "because of, not merely in spite of, its adverse effects upon an identifiable group." *Id*. at 681 (internal quotations omitted).

Plaintiffs allege that the actions giving rise to this lawsuit constitute a coordinated, three-step effort to retaliate against them for seeking information purportedly "made accessible to the public by statute." *See* Dkt. 1 at ¶¶ 19, 28. Specifically, they assert that upon receiving a records request, Webster became "apoplectic" and convened over a dozen meetings to determine "how to harm Plaintiffs to the greatest extent possible." *Id*. at ¶ 28. Plaintiffs claim that these meetings included open discussions of "retaliation"—allegedly in those exact terms—and that Defendants sought to punish them for requesting information that might reveal Webster's alleged misconduct. *Id*.

According to the Complaint, this alleged retaliation consisted of three actions:

1. Webster authored an official document (the email), allegedly fabricating wrongdoing by the Plaintiffs. *Id.* at ¶ 20[11];

2. Plaintiffs contend that same email contained "salacious accusations" designed to generate maximum media exposure and public embarrassment. *Id.* at ¶¶ 19–20; [12] and

3. Webster allegedly induced a former employee to use the public information requests to seek information that would result in the production of the email. *Id.* at ¶ 23.

Even accepting these allegations as true for purposes of this motion, Plaintiffs fail to state a viable First Amendment retaliation claim against Molina and Reno. Any governmental response to that expression, including the initiation of an investigation or implementation of institutional safeguards, constitutes official conduct within the scope of Molina's and Reno's duties; this is particularly applicable to Defendant Reno given his role as Deputy Attorney General of Criminal Justice, to whom the agency's prosecutorial and law enforcement personnel report. These actions, far from infringing on Plaintiffs' rights, reflect core prosecutorial and investigative functions.

Moreover, Plaintiffs misattribute these actions. They concede in the Complaint that it was Webster—not Molina and Reno—who undertook the alleged conduct. As a result, Plaintiffs have not plausibly alleged direct involvement by Molina and Reno in any constitutionally wrongful conduct. The only claim arguably asserted against them is for conspiracy, which likewise fails because Plaintiffs have failed to allege that Molina took any specific action that would give rise to liability. The sole specific reference to Molina in the Complaint concerns an alleged conspiracy; however, as addressed more fully below, Plaintiffs do not identify a single act by Molina in furtherance of that conspiracy. Even construing the allegations in the light most favorable to

---

[11] Plaintiffs allege in a conclusory fashion that Defendants Molina and Reno "collaboratively drafted" the email, without any explanation as why they are contradicting their earlier claim that Defendant Webster created the email. *Compare* Dkt. 1 at ¶ 20 with ¶ 39.
[12] The only reference to Defendants Molina and Reno is a conclusory allegation—unsupported by citation to any specific documents—that Webster and another individual "falsified additional documents" to support these claims.

Plaintiffs, the most that can be reasonably inferred is that Molina received an email from Webster. Merely receiving an email does not constitute an affirmative act and, therefore, cannot support a claim under the governing legal standards.

Because Molina took no action, a necessary element of any constitutional violation is absent. Accordingly, no reasonable official in Molina's position could have understood his conduct—i.e., the absence of any conduct—to violate clearly established law. Therefore, Plaintiffs have failed to plead a valid First Amendment retaliation claim and qualified immunity thus shields Molina from liability, and the claims against him should be dismissed.

Similarly, Plaintiffs have not stated a claim against Reno. The only conduct attributed to Reno is that he conducted a threat assessment, which included arranging for a security detail at Webster's residence. It is the job of the Deputy Attorney General for Criminal Justice to oversee the Office of the Attorney General's criminal law functions, including supervision of investigations and prosecutions, support for local law enforcement, and assistance in cold case investigations. The Court may take judicial notice of the official responsibilities of that role. Because Reno could not have arranged state security in his personal capacity—and only could have done so through his official role—Plaintiffs have not plausibly alleged individual liability. Furthermore, conducting a threat assessment and coordinating security measures do not implicate any constitutional right of Plaintiff. Lastly, no reasonable official could conclude that such actions were unlawful under clearly established law. Accordingly, Plaintiff have also failed to state a claim against Reno and he is also entitled to qualified immunity, and the claims against him should be dismissed.

### b. *Plaintiffs have failed to state a claim for conspiracy under § 1983.*

The absence of a violation of the First Amendment necessarily bars the related conspiracy claim.

i.   *Defendants are entitled to qualified immunity from Plaintiffs conspiracy claims*

If qualified immunity bars Plaintiffs' First Amendment claim, the Court need not consider whether a conspiracy existed to commit that alleged violation. *See Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995); *Bevill*, 26 F.4th at 274–75. A § 1983 conspiracy claim is not an independent cause of action; it requires proof of an underlying constitutional violation. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Because, as discussed above, Defendants are entitled to qualified immunity on the underlying § 1983 claims (Counts 1 and 3), they are likewise entitled to qualified immunity on the conspiracy claims (Counts 2 and 4).

Alternatively, were the Court to find there was an underlying constitutional violation, Defendants are nonetheless entitled to qualified immunity from Plaintiffs claims because their actions were objectionably reasonable. In § 1983 cases alleging a conspiracy between public officials and private individuals, qualified immunity remains fully available to the government official. *Hill v. City of Seven Points*, No. 00-41436, 2002 WL 243261, at *8 (5th Cir. Jan. 17, 2002). As the Fifth Circuit has explained, courts must not permit the mere assertion of a conspiracy to bypass the qualified immunity defense, because doing so would expose officials to discovery and trial "even where the official action was objectively reasonable." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272 (5th Cir. 1992). That result, the court cautioned, would threaten to "destroy[] the efficacy of the defense." *Id*. To avoid this, the proper analysis at the motion-to-dismiss stage requires courts to first determine whether the alleged state action was objectively reasonable. *Id*. Only if it was not does the inquiry proceed to consider whether the official acted pursuant to a conspiracy. Applying this standard, the claims against the Defendants must be dismissed.

First, the Complaint alleges no specific personal conduct by Molina. Without any act to assess for reasonableness or conspiratorial purpose, there is no basis to overcome his qualified immunity. Accordingly, the conspiracy claims against him must be dismissed

Second, Plaintiffs allege that Reno merely engaged in conduct squarely within the scope of his official duties. Reno's action—whatever its timing—constituted routine professional responsibilities and neither reflected any unlawful or retaliatory intent nor had any impact on Plaintiffs. Because the act of conducting an internal threat assessment was within the scope of his official duties, it is objectively reasonable and cannot form the basis for Plaintiffs' § 1983 conspiracy claims.

To the extent there is any doubt as to the reasonableness of Reno's action, Plaintiffs own Complaint underscores the seriousness of the issue: Plaintiffs purport to be aware of security measures taken for Webster, despite having no personal or professional proximity to him. Dkt. 1 at ¶¶ 21, 5–8 (noting all Plaintiffs are domiciled in Austin, Texas while Webster is domiciled in Williamson County, Texas). The inclusion of these details in their Complaint reinforces the underlying factual basis for the concerns Webster documented.

Similarly, the allegation that Webster documented previously expressed safety concerns in response to Plaintiffs' protected activity does not support a constitutional claim. On the contrary, Webster's action—recording preexisting concerns in light of subsequent developments—is both logical and objectively reasonable. This is particularly true given Plaintiffs' own assertions regarding the longstanding tumultuous relationship between Webster and Judd Stone and, as noted above, Plaintiffs' ongoing and current fixation with the occupants of Webster's home. Such conduct neither exceeds the bounds of official discretion nor violates clearly established law.

Because Reno and Webster acted reasonably, and Molina did not act at all, any conspiracy allegations are legally irrelevant, and their entitlement to qualified immunity remains intact.

        ii.     *Plaintiffs' claims are barred by the intra-corporate conspiracy doctrine*

Plaintiffs claim that Reno and Molina participated in a conspiracy with Webster to deprive them of their First Amendment rights in violation of 42 U.S.C. § 1983. "To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Whisenant v. City of Haltom*, 106 F. App'x 915, 917 (5th Cir. 2004) (per curiam) (citing *Cinel*, 15 F.3d 1338 (5th Cir. 1994)). By necessity, this requires Plaintiffs to have plead facts plausibly indicating a conspiracy's existence as well as their membership in that conspiracy. The essence of a conspiracy to violate § 1983 is an agreement to misuse official power under color of state law to deprive an individual of federal rights. *See Cinel*, 15 F.3d at 1343.

The Fifth Circuit has long recognized that a "corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hilliard v. Ferguson*, 30 F.3d 649, 652, 652–53 (5th Cir. 1994). This intracorporate-conspiracy doctrine, "emanating in corporate law, has been applied in this Circuit to actions of school boards even when the defendants are sued in their individual capacities." *Hansard v. Zamora*, 749 F. Supp. 3d 790, 793–94 (W.D. Tex. 2024) (citing *Bright v. City of Killeen Tex.*, No. 6:20-CV-431-ADA-JCM, 2021 WL 4431114, at *5 (W.D. Tex. May 11, 2021), *report and recommendation adopted sub nom. Bright v. City of Killeen*, No. W-20-CV-00431-ADA, 2021 WL 4427486 (W.D. Tex. Sept. 27, 2021)). Plaintiffs can cite no authority holding that officers of the same organization, sued in their individual rather than official capacities, can legally conspire with one another. Courts in this district and elsewhere have consistently held the opposite. *See Bright,* 2021 WL 4431114 at *14–15 (citing *Angelle v. Town of Duson*, No. 6:18-cv-00272, 2018 WL 4649788, at *8 (W.D. La. Aug. 7,

2018) (finding that officers of a police department constituted a single entity incapable of conspiring with itself, collecting Fifth Circuit authorities and noting that "even when the defendants are sued in their individual capacities, as the Defendants in this case, the premise is still true")); *see* also *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (*citing Nelson Radio & Supply Co. v. Motorola Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)); *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004) (dismissing § 1983 conspiracy claims brought against two police officers from the same police department in their individual capacities under the intra-corporate conspiracy doctrine). Because Defendants—as officers of the same agency—are legally incapable of conspiring with one another, Plaintiffs' conspiracy claims must be dismissed.

### c. *Plaintiffs have failed to allege facts or legal basis entitling them to relief*

Although Plaintiffs assert that they have suffered actual, economic, and noneconomic harm, the Complaint is devoid of any factual allegations supporting those claims. *See generally* Dkt. 1. Such conclusory assertions fall far short of the federal pleading standard, which requires that each claim be supported by sufficient factual matter to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In the context of a § 1983 action, the Supreme Court has made clear that compensatory damages must be based on actual injury caused by the defendant—not on the "abstract value" of constitutional rights alone. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986); *see also*, *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (to state a viable § 1983 claim, a plaintiff must plead facts showing that the defendant's conduct was the actual, actionable cause of the alleged injury).

Here, Plaintiffs allege that Defendants harmed them by "impeding their ability to obtain cases and clients" and damaging their reputations. Dkt. 1 at ¶ 36. But this allegation is wholly conclusory and unsupported by any facts establishing a causal link to any specific action by Defendants. In fact,

the only concrete allegation of harm—losing a business opportunity—occurred before the submission of the PIA request or any alleged retaliatory conduct. Plaintiffs cannot plausibly claim that later actions caused an injury that had already occurred. As such, the claim fails for lack of causation.

Because Plaintiffs have failed to plead facts showing any injury traceable to the conduct of any Defendant, they have not stated a plausible claim for damages under § 1983. Accordingly, the Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).

### B. The Court Should Dismiss Plaintiffs' Claims Under Rule 12(b)(1) for Lack of Jurisdiction

Rule 12(b)(1) authorizes a federal court to dismiss a claim for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted).

The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). An action may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on any of three separate grounds: (1) the complaint standing alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, the undisputed facts, and the

court's resolution of disputed facts. *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989). The court may consider affidavits and other evidence in resolving factual issues relating to jurisdictional questions. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion before addressing any motion as to the merits. *Ramming*, 281 F.3d at 161.

### 1. Plaintiffs lack standing to bring their § 1983 claims against Defendants

To have standing to bring a suit, a plaintiff must show (1) an "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). An injury-in-fact is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

### a. *Stone Hilton lacks standing because its only alleged injury predates the alleged protected activity*

The purported harms—reputational and economic—are asserted collectively by Plaintiffs. The retaliatory acts allegedly committed by Webster include drafting an email recounting Stone's instance of violence and sexual harassment—with no reference to Stone Hilton—and interference with Stone Hilton's business. Dkt. 1 at ¶33 ("Defendants' actions—from Webster's interference with Stone Hilton's business to their composition and planned release of the email designed to slander Plaintiffs—have inflicted reputational and economic injuries."). Regarding economic injury, the sole factual allegation concerns the loss of a potential client to Stone Hilton: "After learning that Stone Hilton had reached an agreement in principle with a prospective client for a potentially six-

figure engagement, Webster used his official authority within OAG to communicate to the client that they should not hire Stone Hilton. ***A client, who would have been represented by the firm, Stone Hilton.*** *Id.* at ¶16 (emphasis added). Even assuming the allegation is true, the alleged act—and any resulting "harm"—predates the exercise of any constitutional right and therefore cannot constitute injury resulting from unlawful retaliation by Webster.

Alternatively, Plaintiffs lack standing to proceed against Reno and Molina. To establish standing to proceed against Defendants in their individual capacity, Plaintiffs were "required to allege facts tending to establish that his injuries are fairly traceable to misconduct engaged in by these specific defendants." *High v. Karbhari*, 774 F. App'x. 180, 183 (5th Cir. 2019) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 396 (5th Cir. 2015)). Here, the only identified alleged misconduct by Defendants involves loss of potential business and reputational harm.

Stone Hilton stands as the sole plaintiff with any plausible claim of injury from lost business—though Defendants maintain that interference with a prospective contract does not constitute a § 1983 injury.[13]

Crucially, the Complaint attributes involvement in the alleged interference exclusively to Webster: "Webster used his official authority within OAG to communicate to the client that they should not hire Stone Hilton." Dkt. 1 at ¶ 16. It alleges no conduct by Molina or Reno related to this incident.

Because Plaintiffs fail to allege any facts linking Stone Hilton's injuries to misconduct by Molina or Reno, they cannot establish that Stone Hilton suffered harm fairly traceable to these

---

[13] Stone Hilton likewise lacks standing because it has failed to show that it has suffered any injury-in-fact. See *Food and Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 393–94 (2024).

Defendants' actions. Consequently, Stone Hilton lacks standing to bring claims against Reno and Molina.

  **b.** ***Hilton and Stone lack standing because they have failed to allege an injury-in-fact***

  Plaintiffs' generalized assertions that their reputations have been harmed are conclusory and unsupported by any factual allegations. General assertions of harm to reputation do not constitute an injury-in-fact as they are not concrete, particularized, actual or imminent. *See, e.g., Copeland v. Internal Rev. Svcs.*, No. 3:20-CV-3288, 2021 WL 3713071, at *4 (N.D. Tex. Aug. 4, 2021) (noting that a plaintiff must plead factual allegations to support an injury-in-fact, and bare assurance that an injury exists, without any supporting factual allegations, is not sufficient). Without a concrete injury-in-fact there is nothing that could be fairly traceable to the Defendants. Accordingly, the claims against the Defendants must be dismissed for lack of standing.

  Alternatively, Stone and Hilton lack standing to bring claims against Molina and Reno because the Complaint fails to allege any specific acts by these defendants that individually caused a concrete, particularized injury. Specifically, the Complaint does not identify any distinct misconduct by Molina or Reno that directly caused injury to Plaintiffs. Instead, all allegations of wrongful conduct are attributed to Webster. The only alleged act involving Reno is the dispatch of a security detail to Webster's residence during an internal threat assessment. Dkt. 1 at ¶ 19 ("For example, Reno ultimately dispatched a security detail to Webster's private residence . . ."). This conduct is neither alleged to have injured Plaintiffs in a concrete or particularized manner, nor could a reasonable person conclude that such an action inflicted injury upon a third party unconnected to the security assessment. Furthermore, the Complaint is wholly devoid of a single

allegation of identifiable misconduct by Molina, only conclusory assertions of involvement in a conspiracy.

Hilton and Stone lack standing because they fail to allege an injury-in-fact. As shareholders in Stone Hilton, neither individual have standing to sue under § 1983 for the alleged harms to Stone Hilton. The Fifth Circuit in *Schaffer v. Universal Rundle Corp.* makes this clear:

> [t]he general rule . . . that an action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation, since the cause of action being in the corporation, the stockholder's rights are merely derivative and can be asserted only through the corporation.

397 F.2d 893, 896 (5th Cir. 1968). The same logic applies here. Neither Stone nor Hilton have alleged they "sustained identifiable losses as [] individual[s] as well as in [their] corporate role[s]." *McDonald v. Bennett*, 674 F.2d 1080, 1086 (5th Cir. 1982). Accordingly, Stone and Hilton cannot pursue constitutional claims for harm allegedly done to Stone Hilton under § 1983.

Further, while the Complaint broadly references reputational harm, it fails to allege any concrete, particularized, actual, or imminent injury to Hilton's personal reputation. Indeed, the allegedly defamatory statements cited as harmful pertain specifically to Stone—not Hilton. Dkt. 1 at ¶¶ 21 ("Webster wrote the email… claim[ing] to be concerned about his physical safety ***from Stone***[.]"), 22 ("Webster ***accused Stone*** of wanting to see him sexually assaulted in front of his children . . . concocted wholly with the intention of ***slandering Stone***…. Webster professed terror in response to allegations ***that Stone*** had said …"). Because Hilton cannot bring § 1983 claims for injuries he has not personally suffered, he lacks standing.

## VI.    <u>Conclusion</u>

Plaintiffs are using this litigation to deflect from the very serious, disturbing, and verifiable facts that were revealed about the reason behind their departure from the OAG and concerning behavior that has continued to this day. Plaintiffs have pled at most a war of words between two disgruntled former employees and their former employer, who was forced to document his serious concerns related to their erratic behavior. Despite the salacious allegations by Plaintiffs, they have failed to establish a violation of the First Amendment to overcome qualified immunity, or even establish their standing to assert their claims in the first place.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court grant their Motion to Dismiss thereby dismissing with prejudice all claims asserted by Plaintiffs against them and for all other relief, in law and in equity, to which they are justly entitled.

Respectfully submitted.

KEN PAXTON
Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Kimberly Gdula*
KIMBERLY GDULA
Chief, General Litigation Division
Texas Bar No. 24052209
WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 241-9629
(512) 320-0667 fax
Kimberly.Gdula@oag.texas.gov
Will.Wassdorf@oag.texas.gov
**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2025 true and correct copy of the foregoing document was

served via the Court's electronic filing system to all counsel of record.

*/s/ Kimberly Gdula*
KIMBERLY GDULA
Chief, General Litigation Division